| | |
|---|---|
| SMS SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HUB INTERNATIONAL NORTHWEST, LLC, a Washington limited liability company,<br><br>Defendant. | CASE NO. 11-cv-00336-MJP<br><br>ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

This matter comes before the Court on Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. (Dkt. Nos. 34, 40.) Having reviewed the motions, the oppositions (Dkt. Nos. 44, 48), the replies (Dkt. Nos. 51, 53), and all related papers, the Court GRANTS Defendant's motion for summary judgment and declines to reach Plaintiff's motion for summary judgment.

**Background**

In August 2008, SMS's sole member, Steven Shindler, purchased a 2007 Dassault Falcon 2000EX EASy aircraft (the "Aircraft"). (Compl. at ¶¶ 6-7.) The same day, he sold the Aircraft to Vesey Air, LLC ("Vesey"), a subsidiary of GE Capital Corporation, and Vesey leased the Aircraft back to SMS for a 64-month term. (Id. at ¶ 7.)

The lease agreements placed the entire risk of loss of the Aircraft on SMS, and required SMS to obtain insurance coverage for the Aircraft, including "hull coverage." (Ross Decl., Dkt. No. 36-3 at 2.) As part of its agreement with Vesey, SMS was required to maintain a policy limit of at least $33 million. (Id. at 8-9; Howenstine Decl., Dkt. No 41, Ex. 2 at 31.)

SMS hired NII Holdings, Inc. to manage the Aircraft and NII Holdings then chose HUB as the insurance broker. (Compl. at ¶ 7.) In 2008, HUB's broker Sue Carroll ("Carroll") procured insurance for the Aircraft with a hull policy limit of $33 million. (Ross Decl., Dkt. No. 38-3 at 3.) The following year, HUB and NII entered into a written agreement ("Service Plan"). The Service Plan was drafted by HUB and stated that HUB would "review contracts to assure adequacy of coverage in relation to exposures and contract requirements, as needed." (Howenstine Decl., Dkt. No. 43 at 58 (Service Plan).) In 2009, when the first annual policy on the Aircraft expired, HUB, with the approval of NII and Shindler, reduced the insurance coverage to $27 million. (Id. at 62-63.)

In February 2010, the Aircraft was totaled when the roof of the hangar it was parked in collapsed during a snowstorm. (Compl. at ¶ 20.) SMS paid Vesey $30 million in damages; however, per the insurance contract, SMS recovered only $27 million in insurance proceeds. (Id. at ¶ 21.) SMS alleges that as a result of being negligently underinsured it lost $6 million,

consisting of the $3 million it had to pay to Vesey, and the $3 million it would have received had HUB kept the policy limits at $33 million as required by Plaintiff's lease agreements. (Id.)

**Analysis**

1. Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

2. Negligence

Plaintiff's sole cause of action is negligence. To recover against an insurance broker based on negligence, the insured must prove: (1) the broker had a duty of care to protect the insured against a certain risk, (2) the broker breached that duty, and (3) that the breach was the proximate cause, (4) of the insured's damages. Peterson v. Big Bend Ins. Agency, 150 Wn. App. 504, 515 (2009).

Defendant argues it did not owe a duty to Plaintiff to advise it of the adequacy of insurance coverage. The Court agrees, and finds summary judgment appropriate.

The existence of a duty is a question of law for the court, to be considered in light of public policy considerations. Suter v. Virgil R. Lee & Son, Inc., 51 Wn. App. 524, 528 (1988). Generally, a broker has no duty to procure a policy affording the client complete liability protection. Id. It is the insured's obligation to advise the broker of the insurance that he or she wants, including the limits of the policy to be issued. Id. However, if the broker assumes additional duties by contract, holds herself out as possessing an extraordinary skill, or has a special relationship with the buyer, the broker has a duty to advise the buyer of the adequacy of insurance. Peterson, 150 Wn. App. at 515; Hardt v. Brink, 192 F. Supp. 879, 881 (W.D. Wash. 1961). Whether or not an additional duty is assumed will depend upon the particular relationship between the parties. Hardt, 192 F. Supp at 881.

Plaintiff argues a duty existed based on either contract or a special relationship. The Court disagrees with both arguments.

Plaintiff claims that Defendant had a duty to ensure adequate coverage based on the Service Plan. Plaintiff's argument is unpersuasive. The Service Plan is between Defendant and third party NII and states that Defendant would "review contracts to assure adequacy of coverage in relation to exposures and contract requirements, as needed." (Howenstine Decl., Dkt. No. 43 at 58 (Service Plan).) This language is vague and does not constitute a promise to review contracts all the time, without prompt. Rather, the language suggests that the insured will request such review when it is needed. During the two years Plaintiff procured insurance through Defendant, Plaintiff never requested that Defendant review its leases to determine the adequacy of Plaintiff's coverage. (Id. at 28 (Carroll Dep.).) Thus, Defendant did not owe a duty to Plaintiff based on the Service Plan.

1  Plaintiff alternatively argues that the parties' special relationship gave rise to a duty. This
2  argument is also unpersuasive.
3  Absent a special relationship, an insurance broker has no obligation to recommend
4  liability limits higher than those chosen by the insured. Gates v. Logan, 71 Wn. App. 673, 678
5  (1993). A special relationship exists if either (1) the broker holds herself out as an insurance
6  specialist and receives compensation for consultation separate from the premiums paid by the
7  insured, or (2) the broker and insured have a longstanding relationship that includes interactions
8  on the question of coverage, and the insured relied on the expertise of the broker to his or her
9  detriment. Suter, 51 Wn. App. at 528.
10  Here, a special relationship does not exist under either prong. First, Plaintiff did not
11  compensate Defendant for consultation and advice separate from the premiums paid by Plaintiff.
12  Plaintiff argues it paid a higher price to retain Defendant's expertise, however, this fact
13  establishes only that Plaintiff paid Defendant a premium, not that it separately paid for
14  Defendant's consultation and advice about Plaintiff's insurance limits and lease requirements.
15  (Howenstine Decl., Dkt. No. 43 at 23 (Carroll Dep.); Howenstine Decl., Dkt. No. 41-1 at 72-73
16  (Cardwell Dep.).) Therefore, Plaintiff has not established a special relationship under the first
17  test.
18  Second, Plaintiff and Defendant do not have a longstanding relationship nor did they
19  discuss the adequacy of insurance coverage. At the time of the loss, Defendant had been
20  Plaintiff's broker for only two years. (Carroll Decl., Dkt. No. 35-1 at 5); See, e.g., AAS-DMP
21  Mgmt., L.P. Liquidating Trust v. Acordia Northwest, Inc., 115 Wn. App. 833, 840 (2003)
22  (finding a longstanding relationship where broker sold insurance to insured and managed all of
23  insured's policies over a 10-15 year period). Furthermore, a special relationship does not exist
24

because, during the two years Plaintiff was Defendant's client, Plaintiff never consulted with or received advice from Defendant concerning the adequacy of Plaintiff's coverage. (Howenstine Decl., Dkt. No. 43 at 28 (Carroll Dep.)); See, e.g., Lipscomb v. Farmers Ins. Co. of Washington, 142 Wn. App. 20, 28-29 (2007) (no special relationship exists where the insured never consulted with the agent about the adequacy of coverage and the agent never gave the insured any advice). Plaintiff contends that its management company, third party NII, has had a relationship with Defendant since 2004 and this should be considered the required relationship. Plaintiff has cited no Washington authority, however, that holds that a special relationship is established via a third party. Therefore, Plaintiff fails to establish a special relationship under the second test.

Because Plaintiff did not pay Defendant for consultation and advice about coverage, did not consult or seek advice from Defendant about coverage, and did not have a longstanding relationship with Defendant, no special relationship exists and Defendant did not have a duty to ensure Plaintiff was adequately covered.

## Conclusion

The Court GRANTS Defendant's motion for summary judgment. The Court finds Plaintiff's negligence claim fails because Defendant did not owe a duty to Plaintiff, based on either contract or special relationship, to advise Plaintiff of the adequacy of insurance coverage. The Court therefore need not reach Plaintiff's motion for partial summary judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of March, 2012.

Marsha J. Pechman
United States District Judge